UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

DAVID RAMSEY,                           Case No. 1:08-cv-134

       Plaintiff,                         Beckwith, J.
                                           Black, M.J.
vs.

COMMISSIONER OF SOCIAL SECURITY,

       Defendant.

**REPORT AND RECOMMENDATION[1] THAT: (1) THE ALJ'S NON-DISABILITY FINDING BE FOUND SUPPORTED BY SUBSTANTIAL EVIDENCE, AND AFFIRMED; AND (2) THIS CASE BE CLOSED**

This is a Social Security appeal brought pursuant to 42 U.S.C. § 405(g). At issue is whether the administrative law judge ("ALJ") erred in finding that plaintiff was not entitled to Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). (*See* Administrative Transcript ("Tr.") (Tr. at 18-26) (ALJ's decision)).

**I.**

Plaintiff filed an application for a DIB and SSI on October 2, 2004, alleging a disability onset date of October 18, 2004, due to narcolepsy. (Tr. 55-57, 347-48.) His application was denied initially and on reconsideration. Plaintiff then requested a hearing *de novo* before an ALJ. An evidentiary hearing, at which plaintiff was represented by counsel, was held on May 17, 2007. (Tr. 360-78.) Robert Breslin testified as a vocational expert. (Tr. 378-84.)

On July 27, 2007, the ALJ entered his decision denying plaintiff's claim. That

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendation.

decision stands as defendant's final determination consequent to denial of review by the Appeals Council on January 28, 2007. (Tr. 9.)

The ALJ's "Findings," which represent the rationale of the decision, were as follows:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2009.

2. The claimant has not engaged in substantial gainful activity since October 18, 2004, the alleged onset date (20 CFR 404.1520(b), 404.1571 *et seq.*, 416. 920(b) and 416.971 *et seq.*).

3. The claimant has the following severe impairments: nacrolepsy, asthma, depressive disorder, anxiety disorder, and mild obstructive sleep apnea (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926.

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform less than the full range of light work. Due to sleepiness during sedentary activity as a result of narcolepsy and mild obstructive sleep apnea, he should do only minimal sitting at his job. He should sit no more than two hours a day and no more than 15 minutes each hour. He can stand and walk without limitation. He should not climb ladders, scaffolds, or ropes. He should not drive and should not work around hazards such as unprotected heights or unguarded moving machinery. Due to asthma he should be required to lift, carry, push, or pull no more than 20 pounds occasionally or 10 pounds frequently and should work in a clean air and environment. Due to depression and anxiety, he has mild limitations in activities of daily living and social functioning with moderate limitation in maintaining concentration, persistence, and pace. Accordingly, he should work in a stable, predictable work environment and should perform only routine repetitive tasks. He should not be subject to strict, high time production quotas.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965.)

7. The claimant was born on October 17, 1972 and was 32 years old, which is defined as a younger individual again 18-49, on the alleged disability onset date. (20 CFR 404.1563 and 416.963.)

8. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964.)

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (*See* SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c), 404.1566, 416.960(c) and 416.966.)

11. The claimant has not been under a disability, as defined in the Social Security Act, from October 18, 2004 through the date of this decision. (20 CFR 404.1560(g) and 416.960(g)).

(Tr. 20 - 26.)

In sum, the ALJ concluded that plaintiff was not under a disability as defined by the Social Security Regulations and was therefore not entitled to DIB and/or SSI.

On appeal, plaintiff maintains that: (1) the ALJ erred in weighing the medical evidence; (2) the ALJ failed to give goods reasons for rejecting the opinion of plaintiff's treating physician; (3) the ALJ erred in evaluating plaintiff pain, credibility, and subjective complaints; and (4) the ALJ committed various vocational errors. Each argument will be addressed in turn.

**II.**

The Court's inquiry on appeal is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). In performing this review, the Court considers the record as a whole. *Hephner v. Mathews,* 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if substantial evidence also exists in the record upon which the ALJ could have found plaintiff disabled. As the Sixth Circuit has explained:

> The Commissioner's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard presupposes that there is a "zone of choice" within which the Commissioner may proceed without interference from the courts. If the Commissioner's decision is supported by substantial evidence, a reviewing court must affirm.

*Felisky v. Bowen,* 35 F.3d 1027, 1035 (6th Cir. 1994).

Upon consideration of an application for disability benefits, the ALJ is guided by a sequential benefits analysis, which works as follows: At Step 1, the ALJ asks if the claimant is still performing substantial gainful activity; at Step 2, the ALJ determines if one or more of the claimant's impairments are "severe;" at Step 3, the ALJ analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the ALJ determines whether or not the claimant can still perform her past relevant work; and, finally, at Step 5 – the step at which the burden of proof shifts to the ALJ – the ALJ determines, once it is established that the claimant

4

can no longer perform her past relevant work, whether significant numbers of other jobs exist in the national economy which the claimant can perform. *See Gwizdala v. Commissioner of Soc. Sec.*, No. 98-1525, 1999 WL 777534, at *2 n.1 (6th Cir. Sept. 16, 1999) (*per curiam*). If the ALJ determines at Step 4 that the claimant can perform her past relevant work, the ALJ need not complete the sequential analysis. *See* 20 C.F.R. § 404.1520(a). However, if the ALJ errs in finding that the claimant can perform her past relevant work, the matter should be remanded for further consideration under Step 5. *See Lauer v. Bowen*, 818 F.2d 636, 641 (7th Cir. 1987).

The claimant bears the ultimate burden to prove by sufficient evidence that she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). That is, he must present sufficient evidence to show that, during the relevant time period, he suffered an impairment, or combination of impairments, expected to last at least twelve months, that left him unable to perform any job in the national economy. 42 U.S.C. § 423(d)(1)(A).

**A.**

For his first two assignments of error, plaintiff maintains that the ALJ erred in failing to give deference to the opinion of Dr. Wooten, plaintiff's treatment physician and sleep disorder specialist. Plaintiff further asserts that the ALJ erred in failing to give "good reasons" for rejecting Dr. Wooton's disability finding. Plaintiff's assertions are unavailing.

An ALJ must give the opinion of a treating source controlling weight if he or she finds that the opinion is "well-supported by medically acceptable clinical and laboratory

5

diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record."  *Wilson v. Commissioner of Soc. Sec.,* 378 F.3d 541, 544 (6th Cir. 2004) (quoting 20 C.F.R. § 404.1527(d)(2)).  Deference is due, however, only when the physician supplies sufficient medical data to substantiate his diagnosis and opinion. *Giddings v. Richardson,* 480 F.2d 652, 656 (6th Cir. 1976).  Mere diagnosis of a condition is not indicative of a disabling functional debilitation.  *See Varley v. Secretary of Health & Human Servs.,* 820 F.2d 777, 780 (6th Cir. 1987).

The ALJ must provide "specific reasons for the weight given to a treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."  *Wilson,* 378 F.3d at 544 (citing Soc. Sec. Rul. 96-2p).  Nonetheless, the ultimate determination of whether a claimant is "disabled" rests with the Commissioner, and not with the treating physician. *See* Soc. Sec. Ruling 96-5p; *see also Varley,* 820 F.2d at 780.

Here, plaintiff underwent a "Sleep Disorders Evaluation" on November 14, 2002, with Virgil D. Wooten, M.D, and plaintiff was diagnosed with narcolepsy. (Tr. 205-06, 211).  Plaintiff began taking Ritilin and continued treating with Dr. Wooten through December 2004.

On June 23, 2005, Dr. Wooten filled out a "Sleep Disorders Residual Functional Capacity Questionnaire " wherein he found plaintiff suffered from fatigue, excessive daytime sleepiness, and memory impairment.  (Tr. 235-39).  When asked about plaintiff's prognosis, Dr. Wooten responded that he could not answer this question either since he

had not seen him since December 3, 2004. (Tr. 237). Dr. Wooten also failed to respond to the question that asked if plaintiff was presently taking his medication as prescribed. (*Id.*) However, he indicated that plaintiff would have serious limitations maintaining attention for two-hour segments. (Tr. 238).

In March 2006, plaintiff returned to treatment with Dr. Wooten, and resumed his use of Ritalin. (Tr. 330). There is no evidence that plaintiff had received treatment since February 2005. In April 2006, Dr. Wooten noted that Ritalin helped Mr. Ramsey's alertness, and Dr. Wooten listed his impression as narcolepsy, partially controlled with Ritalin, and continued hypersomnolence. (Tr. 331).

On August 1, 2006, Dr. Wooten filed out a form for the Hamilton County Job & Family Services wherein he opined that plaintiff was not able to work and could not perform any duties requiring sustained attention or alertness. (Tr. 344).

In his decision, the ALJ afforded great weight to Dr. Wooten's June 2005 form, but did note that Dr. Wooten had not seen plaintiff since December 2004. (Tr. 23). The ALJ further noted that when plaintiff resumed treatment with Dr. Wooten, in March 2006, both plaintiff's statements and the treatment records reported improvement. (Tr. 23-24). However, in August 2006, despite reporting that Ritalin had helped plaintiff's alertness (Tr. 331), Dr. Wooten opined that plaintiff could not perform duties that required sustained attention and alertness. (Tr. 344).

The ALJ rejected Dr. Wooten's August 2006 assessment, finding that it was inconsistent with plaintiff's statements and Dr. Wooten's own notes, specifically the note from April 2006 that reported increased alertness (Tr. 331). *See Villarreal v. Sec'y of*

7

*Health & Human Servs.*, 818 F.2d 461, 463 (6th Cir.1987) (Secretary reasonably rejected entry on residual functional capacity form that "contained no substantiating medical data and [that] was inconsistent" with the physician's previous opinions).

The ALJ gave great weight to the assessment of Dr. Bailey, who performed a consultative examination in January 2006. Dr. Bailey performed a physical examination and reported that it produced normal results. (Tr. 227). Dr. Bailey found that plaintiff was alert and oriented, and a good historian who showed no signs of somnolence (Tr. 227). Based on the findings of the examination, Dr. Bailey found plaintiff capable of performing activities commensurate with his age, including a moderate to marked amount of sitting, walking, standing, bending, kneeling, pushing, pulling, and lifting and carrying heavy objects. Thus, Dr. Bailey did not place restrictions on plaintiff's physical abilities. (Tr. 228).

The ALJ further noted that Dr. Bailey's opinion is supported by Dr. Ficke, who performed a consultative mental status examination in July 2005. Dr. Ficke stated that while plaintiff may be experiencing narcoleptic symptoms, he failed to convey such symptoms during her examination. (Tr. 243). The ALJ also relied on the review of the record done by Dr. Waddell, a psychologist. (Tr. 24). Dr. Waddell opined that plaintiff would be able to adapt to a setting where he performed routine and predictable duties and quotas were not required. (Tr. 270).

Given this evidence, the ALJ reasonably rejected Dr. Wooten's August 2006 conclusory opinion. *See Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) ("[T]he ALJ

is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation.") (internal quotation and citation omitted).

Accordingly, the undersigned agrees that Dr. Wooten's August 2006 assessment is not supported by his clinical or laboratory findings and is inconsistent with his own treatment notes. The ALJ clearly articulated his reasoning for the weight assigned to the opinion of Dr. Wooten, and the undersigned finds that the ALJ's decision to given little weight to Dr. Wooten's disability finding is supported by substantial evidence.

**B**.

For his third assignment of error, plaintiff maintains that the ALJ erred in evaluating his pain, credibility, and subjective complaints. Plaintiff maintains that the ALJ's credibility finding is not supported by the record, in light of plaintiff's good work record, his attempts to work in 2005, and the statements of at least one reviewing physician regarding credibility. The Commissioner, however, asserts that plaintiff has ignored a number of adverse credibility factors set out by the ALJ in his decision, notably plaintiff's no-shows and the gap in treatment with Dr. Wooten. The undersigned agrees, and finds that plaintiff's assertions are not well-taken.

It is within the discretion of the ALJ - who actually meets with and takes testimony from an individual plaintiff - to evaluate that plaintiff's credibility. As the Sixth Circuit has found: "[i]t is for the [Commissioner], not a reviewing court, to make credibility findings." *Felisky v. Bowen,* 35 F.3d 1027,1036 (6th Cir. 1994); *see also McGuire v.*

*Commissioner of Soc. Sec.,* No. 98-1502, 1999 WL 196508, at *6 (6th Cir. Mar. 25, 1999) (*per curiam*) ("An ALJ's findings based on the credibility of an applicant are to be accorded great weight and deference, particularly since the ALJ is charged with the duty of observing a witness's demeanor and credibility").

As noted above, plaintiff started seeing Dr. Wooten in November 2002. (Tr. 205-06). After a visit in April 2003, plaintiff was a reported "no show" for at least four scheduled visits (4/03, 6/03, 8/03, 9/03 - Tr. 216), and he was a "no show" for a scheduled appointment on March 16, 2004 (Tr. 217). And as noted above, after December 3, 2004, Dr. Wooten noted on the June 2005 form that he had not seen plaintiff since that date. (Tr. 237). Dr. Wooten reported a "no show" for a scheduled appointment on September 27, 2005 (Tr. 329), and on March 23, 2006, Dr. Wooten acknowledged that he had not seen plaintiff since December 2004, a gap of approximately 15 months (Tr. 330).

The ALJ also rejected plaintiff's statements about use of medications. (Tr. 23). Despite the gap in treatment, plaintiff testified that he had previously been prescribed enough Ritalin to hold him over during the gap in treatment that lasted until March 2006. (Tr. 369). The ALJ found this highly unlikely and noted that, at best, Dr. Wooten provided plaintiff with a three-month supply of medications. (Tr. 23).[2]

Based on the foregoing, the ALJ's adverse credibility finding is well supported. As noted above, the issue is not whether the record could support a finding of disability,

---

[2] Furthermore, in his June 2005 assessment form, Dr. Wooten did not answer the "yes" or "no" question that asked if his patient was taking medication as prescribed. (Tr. 237).

but rather whether the ALJ's decision is supported by substantial evidence. *See Casey v. Secretary of Health and Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993). The ALJ properly evaluated plaintiff's allegations in accordance with controlling law, and the ALJ reasonably concluded that they were not fully credible. The ALJ's credibility finding is entitled to deference and thus should be affirmed. *See Jones v. Commissioner of Social Security*, 336 F.3d 469, 476 (6th Cir. 2003) ("Upon review, we are to accord the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which we do not, of observing a witness's demeanor while testifying.").

## C.

For his last assignment of error, plaintiff maintains that the ALJ's hypothetical questions to the vocational expert were improper because they did not include limitations on standing and/or walking, the need for unscheduled breaks, as well as problems maintaining attention for two hour intervals. Plaintiff's arguments lack merit.

Contrary to plaintiff's assertions, the hypothetical questions presented to the VE accurately reflected plaintiff's impairments and limitations as found by the ALJ and as supported by substantial evidence in the record. The ALJ was only required to incorporate into the hypothetical questions those limitations that he had accepted as credible. *See Stanley v. Secretary of Health & Human Servs.,* 39 F.3d 115, 118-19 (6th Cir. 1994). As noted above, the ALJ did not give controlling weight to the opinions of plaintiff's treating physicians that plaintiff was disabled because they were inconsistent with the medical evidence of record and plaintiff's own testimony. Furthermore, the ALJ

11

did not find plaintiff's complaints of total disability to be credible. Thus, the ALJ is not obliged to incorporate unsubstantiated complaints. S*ee Hardaway,* 823 F.2d at 927-28.

Here, although plaintiff asserts that he cannot stand/and or walk for six hours, a physical examination by Dr. Bailey produced few, if any, positive findings. Moreover, although Dr. Wooten found that plaintiff had problems maintaining attention for two hours at a time, this finding was made on a form that Dr. Wooten filled out after not having had any contact with plaintiff for more than six months, and therefore, it was not entitled to deference, as noted by the ALJ. (Tr. 23-24).

Furthermore, the ALJ also addressed the issue of poor concentration by referring to the consultative examination of Dr. Ficke (Deardorff) and the review of the mental record by Dr. Waddell (Tr. 24).

Here, as previously discussed, the ALJ's hypothetical question accurately portrayed the limitations supported by the evidence, and the VE's response provided substantial evidence to support the ALJ's finding that plaintiff could perform a significant number of jobs.

For the foregoing reasons, plaintiff's assignments of error are without merit. The ALJ's decision is supported by substantial evidence and should be affirmed.

**IT IS THEREFORE RECOMMENDED THAT:**

1. The decision of the Commissioner is **SUPPORTED BY SUBSTANTIAL EVIDENCE**, and should be **AFFIRMED.**

2. As no further matters remain pending for the Court's review, this case should be **CLOSED.**

Date: February 27, 2009                             s/Timothy S. Black
                                                    Timothy S. Black
                                                    United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

DAVID RAMSEY,                                     Case No. 1:08-cv-134

      Plaintiff,                                   Beckwith, J.
                                                        Black, M.J.

vs.

COMMISSIONER OF SOCIAL SECURITY,

      Defendant.

## NOTICE

      Attached hereto is the Report and Recommended Decision of the Honorable Timothy S. Black, United States Magistrate Judge. Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten (10) days after being served with this Report and Recommendation. Pursuant to Fed. R. Civ. P. 6(e), this period is automatically extended to thirteen (13) days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by mail, and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within ten (10) days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).